UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Norfolk Division



SOUTHERN BANK AND TRUST COMPANY,

    Plaintiff,

v.                                                                                    Civil Action No.: 2:14CV589

RAJESH S. RANDERIA,

    Serve:  246 W. Ocean View Avenue
              Norfolk, VA  23503

and

PARUL R. RANDERIA,

    Serve:  246 W. Ocean View Avenue
              Norfolk, VA  23503

    Defendants.

## COMPLAINT

Plaintiff, Southern Bank and Trust Company ("Southern"), by counsel, for its Complaint against Defendants Rajesh S. Randeria and Parul R. Randeria, states as follows:

1. Southern is a banking corporation duly organized and validly existing pursuant to the laws of the State of North Carolina with its principal place of business in the State of North Carolina.

2. Defendants are residents and domiciliaries of the Commonwealth of Virginia.

3. The Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1322 because the amount in controversy exceeds $75,000.00 and the matter involves citizens from different states.

4. The Court has personal jurisdiction over the Defendants pursuant to Va. Code § 8.01-328.1 because they are residents of the Commonwealth of Virginia.

5. Venue is proper pursuant to 28 U.S.C. § 1391(a)(c) and Local Rule 3(C) because a substantial part of the events giving rise to Southern's claim occurred in this judicial district and division.

6. On February 18, 2005, Defendants executed a Credit Agreement and Disclosure ("First Credit Agreement"), pursuant to which Bank of the Commonwealth extended a line of credit in the original principal amount of $350,000.00 to the Defendants (the "Loan"). A copy of the First Credit Agreement is attached hereto, marked Exhibit "1" and incorporated herein as if fully set forth.

7. On September 18, 2009, Defendants executed a second Credit Agreement and Disclosure ("Second Credit Agreement") which modified the terms of the Loan by extending the maturity date March 18, 2014. A copy of the Second Credit Agreement is attached hereto, marked Exhibit "2" and incorporated herein as if fully set forth.

8. The Loan is secured by a Credit Line Deed of Trust ("Deed of Trust") recorded February 25, 2005 in the Clerk's Office of the Circuit Court of the City of Norfolk, Virginia ("Clerk's Office") as Instrument #050007647, conveying the property known as 246 W. Ocean View Avenue, Norfolk, Virginia, as security for the Loan.

9. The First Credit Agreement and Second Credit Agreement are referred to collectively as the "Credit Agreements."

10. Bank of the Commonwealth no longer exists, having been placed into receivership and closed by regulatory authorities on September 23, 2011. Following Bank of the Commonwealth's failure and receivership, Southern purchased and succeeded to Bank of the

Commonwealth's interest in the Loan, including but not limited to the First Credit Agreement, Second Credit Agreement and Deed of Trust.

11. By Assignment recorded July 31, 2013, the Federal Deposit Insurance Corporation, as receiver for Bank of the Commonwealth, assigned its right title and interest to and under the Deed of Trust to Southern.

12. On February 21, 2014, Southern advised the Defendants that it expected payment in full of all amounts due on the maturity date of March 18, 2104. A copy of the February 21, 2014 Letter is attached as Exhibit "3".

13. Defendants failed to pay the Loan when due.

14. The Loan is in default.

15. By letter dated May 13, 2014, Southern made demand for payment in full on the Loan from Defendants (the "Demand Letter"). A copy of the Demand Letter is attached hereto, marked Exhibit "4" and incorporated herein as if fully set forth.

16. Defendants have failed to make payment as required by the Credit Agreements. As a direct and proximate result thereof, Defendants are in default and are liable to Southern as follows:

- Principal:   $333,010.95
- Interest:    $18,569.72 (through November 17, 2014 - interest accrues thereafter at the Default Rate provided for in the Note)
- Late fees:   $87.48
- Plus reasonable attorney's fees and collection expenses incurred by the note holder.

**WHEREFORE,** Southern Bank and Trust Company moves for judgment against defendants Rajesh S. Randeria and Parul R. Randeria as set forth hereinabove.

<div style="text-align: right;">SOUTHERN BANK AND TRUST COMPANY</div>

By: *Megan E. Burns*
Of Counsel

Jeffrey H. Gray, Esquire (VSB No. 22304)
Megan E. Burns, Esquire (VSB No. 35883)
TROUTMAN SANDERS LLP
222 Central Park Avenue, Suite 2000
Virginia Beach, VA  23462
(757) 687-7500
(757) 687-7510 - Fax
E-mail:  jeff.gray@troutmansanders.com
E-mail:  megan.burns@troutmansanders.com
*Counsel to Southern Bank and Trust Company*

23697193v1

# CR[illegible]T AGREEMENT AND DIS[illegible]SURE

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|---|---|---|---|---|---|---|---|
| $350,000.00 | 02-18-2005 | 08-18-2009 | 3501914 | 0408 | 416980 | 920 | |

References in the shaded area are for our use only and do not limit the applicability of this document to any particular loan or item. Any item above containing "*****" has been omitted due to text length limitations.

**Borrower:** Rajesh S. Randeria
Parul Randeria
246 W. Ocean View Avenue
Norfolk, VA 23503

**Lender:** BANK OF THE COMMONWEALTH
Executive Office
403 Boush Street
P. O. Box 1177
Norfolk, VA 23501-1177

**CREDIT LIMIT: $350,000.00** **DATE OF AGREEMENT: February 18, 2005**

**Introduction.** This Credit Agreement and Disclosure ("Agreement") governs your line of credit (the "Credit Line" or the "Credit Line Account") issued through BANK OF THE COMMONWEALTH. In this Agreement, the words "Borrower," "you," "your," and "Applicant" mean each and every person who signs this Agreement, including all Borrowers named above. The words "we," "us," "our," and "Lender" mean BANK OF THE COMMONWEALTH. **You agree to the following terms and conditions:**

**Promise to Pay.** You promise to pay BANK OF THE COMMONWEALTH, or order, the total of all credit advances and **FINANCE CHARGES**, together with all costs and expenses for which you are responsible under this Agreement or under the "Deed of Trust" which secures your Credit Line. You will pay your Credit Line according to the payment terms set forth below. **If there is more than one Borrower, each is jointly and severally liable on this Agreement. This means we can require any Borrower to pay all amounts due under this Agreement, including credit advances made to any Borrower. Each Borrower authorizes any other Borrower, on his or her signature alone, to cancel the Credit Line, to request and receive credit advances, and to do all other things necessary to carry out the terms of this Agreement. We can release any Borrower from responsibility under this Agreement, and the others will remain responsible.**

**Term.** The term of your Credit Line will begin as of the date of this Agreement ("Opening Date") and will continue until August 18, 2009 ("Maturity Date"). All indebtedness under this Agreement, if not already paid pursuant to the payment provisions below, will be due and payable upon maturity. The draw period of your Credit Line will begin on a date, after the Opening Date, when the Agreement is accepted by us in the Commonwealth of Virginia, following the expiration of the right to cancel, the perfection of the Deed of Trust, the receipt of all required certificates of noncancellation, and the meeting of all of our other conditions and will continue as follows: fifty-four (54) months. You may obtain credit advances during this period ("Draw Period"). You agree that we may renew or extend the period during which you may obtain credit advances or make payments. You further agree that we may renew or extend your Credit Line Account.

**Minimum Payment.** Your "Regular Payment" will be based on a percentage of your outstanding balance as shown below. Your payments will be due monthly.

| Range of Balances | Number of Payments | Regular Payment Calculation |
|---|---|---|
| All Balances | 54 | 1.500% of your outstanding balance |

Your "Minimum Payment" will be the Regular Payment, plus any amount past due and all other charges.

A change in the **ANNUAL PERCENTAGE RATE** can cause the balance to be repaid more quickly or more slowly. When rates decrease, less interest is due, so more of the payment repays the principal balance. When rates increase, more interest is due, so less of the payment repays the principal balance. If this happens, we may adjust your payment as follows: your final payment may be increased. Each time the **ANNUAL PERCENTAGE RATE** increases, We will check to see if your payment is sufficient to pay the interest due. If it is not, your payment may be increased by an amount sufficient to cover all accrued **FINANCE CHARGES**. You agree to pay not less than the Minimum Payment on or before the due date indicated on your periodic billing statement.

**How Your Payments Are Applied.** Unless otherwise agreed or required by applicable law, payments and other credits will be applied to late charges and other charges.

**Receipt of Payments.** All payments must be made by a check, automatic account debit, electronic funds transfer, money order, or other instrument in U.S. dollars and must be received by us at the remittance address shown on your periodic billing statement. Payments received at that address prior to 2:05 PM Eastern Time on any business day will be credited to your Credit Line as of the date received. If we receive payments at other locations, such payments will be credited promptly to your Credit Line, but crediting may be delayed for up to two (2) days after receipt.

**Credit Limit.** This Agreement covers a revolving line of credit for the principal amount of Three Hundred Fifty Thousand & 00/100 Dollars ($350,000.00), which will be your "Credit Limit" under this Agreement. **During the Draw Period we will honor your request for credit advances subject to the section below on Lender's Rights.** You may borrow against the Credit Line, repay any portion of the amount borrowed, and re-borrow up to the amount of the Credit Limit. Your Credit Limit is the maximum amount you may have outstanding at any one time. You agree not to attempt, request, or obtain a credit advance that will make your Credit Line Account balance exceed your Credit Limit. Your Credit Limit will not be increased should you overdraw your Credit Line Account. If you exceed your Credit Limit, you agree to repay immediately the amount by which your Credit Line Account exceeds your Credit Limit, even if we have not yet billed you. Any credit advances in excess of your Credit Limit will not be secured by the Deed of Trust covering your principal dwelling.

**Charges to your Credit Line.** We may charge your Credit Line to pay other fees and costs that you are obligated to pay under this Agreement, the Deed of Trust or any other document related to your Credit Line. In addition, we may charge your Credit Line for funds required for continuing insurance coverage as described in the paragraph titled "Insurance" below or as described in the Deed of Trust for this transaction. We may also, at our option, charge your Credit Line to pay any costs or expenses to protect or perfect our security interest in your principal dwelling. These costs or expenses include, without limitation, payments to cure defaults under any existing liens on your principal dwelling. If you do not pay your property taxes, we may charge your Credit Line and pay the delinquent taxes. Any amount so charged to your Credit Line will be a credit advance and will decrease the funds available, if any, under the Credit Line. However, we have no obligation to provide any of the credit advances referred to in this paragraph.

**Credit Advances.** After the Effective Disbursement Date of this Agreement, you may obtain credit advances under your Credit Line as follows:

**Credit Line Checks.** Writing a preprinted "Home Equity Line Check" that we will supply to you.

**Telephone Request.** Requesting a credit advance from your Credit Line to be applied to your designated account by telephone. Except for transactions covered by the federal Electronic Fund Transfers Act and unless otherwise agreed in your deposit account agreement, you **acknowledge and you agree that we do not accept responsibility for the authenticity of telephone instructions and that we will not be liable for any loss, expense, or cost arising out of any telephone request, including any fraudulent or unauthorized telephone request, when acting upon such instructions believed to be genuine.**

**Requests By Mail.** Requesting an advance by mail.

**Requests In Person.** Requesting a credit advance in person at any of our authorized locations.

If there is more than one person authorized to use this Credit Line Account, you agree not to give us conflicting instructions, such as one Borrower telling us not to give advances to the other.

**Limitations on the Use of Checks.** We reserve the right not to honor Home Equity Line Checks in the following circumstances:

**Credit Limit Violation.** Your Credit Limit has been or would be exceeded by paying the Home Equity Line Check.

**Post-dated Checks.** Your Home Equity Line Check is post-dated. If a post-dated Home Equity Line Check is paid and as a result any other check is returned or not paid, we are not responsible.

**Stolen Checks.** Your Home Equity Line Checks have been reported lost or stolen.

**Unauthorized Signatures.** Your Home Equity Line Check is not signed by an "Authorized Signer" as defined below.

**Termination or Suspension.** Your Credit Line has been terminated or suspended as provided in this Agreement or could be if we paid the Home Equity Line Check.

**Transaction Violation.** Your Home Equity Line Check is less than the minimum amount required by this Agreement or you are in violation of any other transaction requirement or would be if we paid the Home Equity Line Check.

If we pay any Home Equity Line Check under these conditions, you must repay us, subject to applicable laws, for the amount of the Home Equity Line Check. The Home Equity Line Check itself will be evidence of your debt to us together with this Agreement. Our liability, if any, for wrongful dishonor of a check is limited to your actual damages. Dishonor for any reason as provided in this Agreement is not wrongful dishonor. We may choose not to return Home Equity Line Checks along with your periodic billing statements; however, your use of each Home Equity Line Check will be reflected on

Exhibit 1

# CREDIT AGREEMENT AND DISCLOSURE
(Continued)

Loan No: 3501914                                                                                 Page 2

your periodic statement as a credit advance. We do not "certify" Home Equity Line Checks drawn on your Credit Line.

**Transaction Requirements.** The following transaction limitations will apply to the use of your Credit Line:

**Credit Line Home Equity Line Check Limitations.** The following transaction limitations will apply to your Credit Line and the writing of Home Equity Line Checks.

**Minimum Advance Amount.** The minimum amount of any credit advance that can be made on your Credit Line is $100.00. This means any Home Equity Line Check must be written for at least the minimum advance amount.

**Telephone Request, Request By Mail and In Person Request Limitations.** There are no transaction limitations for requesting an advance by telephone, requesting an advance by mail or requesting an advance in person.

**Authorized Signers.** The words "Authorized Signer" on Home Equity Line Checks as used in this Agreement mean and include each person who (a) signs the application for this Credit Line, (b) signs this Agreement, or (c) has executed a separate signature authorization card for the Credit Line Account.

**Lost Home Equity Line Checks.** If you lose your Home Equity Line Checks or if someone is using them without your permission, you agree to let us know immediately. The fastest way to notify us is by calling us at (757) 446-6900. You also can notify us at our address shown at the beginning of this Agreement.

**Future Credit Line Services.** Your application for this Credit Line also serves as a request to receive any new services (such as access devices) which may be available at some future time as one of our services in connection with this Credit Line. You understand that this request is voluntary and that you may refuse any of these new services at the time they are offered. You further understand that the terms and conditions of this Agreement will govern any transactions made pursuant to any of these new services.

**Collateral.** You acknowledge this Agreement is secured by the following collateral described in the security instrument listed herein: a Credit Line Deed of Trust dated February 18, 2005, to a trustee in favor of us on real property located in City of Norfolk, Commonwealth of Virginia. The Real Property or its address is commonly known as 246 W. Ocean View Avenue, Norfolk, VA 23503.

**Insurance.** You must obtain insurance on the Property securing this Agreement that is reasonably satisfactory to us. You may obtain property insurance through any company of your choice that is reasonably satisfactory to us. You have the option of providing any insurance required under this Agreement through an existing policy or a policy independently obtained and paid for by you, subject to our right, for reasonable cause before credit is extended, to decline any insurance provided by you. Subject to applicable law, if you fail to obtain or maintain insurance as required in the Deed of Trust, we may purchase insurance to protect our own interest, add the premium to your balance, pursue any other remedies available to us, or do any one or more of these things.

**Right of Setoff.** To the extent permitted by applicable law, we reserve a right of setoff in all your accounts with us (whether checking, savings, or some other account), including without limitation, all accounts you may open in the future. However, this does not include any IRA or Keogh accounts, or any trust accounts for which setoff would be prohibited by law. You authorize us, to the extent permitted by applicable law, to charge or setoff all sums owing on this Agreement against any and all such accounts.

**Periodic Statements.** If you have a balance owing on your Credit Line Account or have any account activity, we will send you a periodic statement. It will show, among other things, credit advances, FINANCE CHARGES, other charges, payments made, other credits, your "Previous Balance," and your "New Balance." Your statement also will identify the Minimum Payment you must make for that billing period and the date it is due.

**When FINANCE CHARGES Begin to Accrue.** Periodic FINANCE CHARGES for credit advances under your Credit Line will begin to accrue on the date credit advances are posted to your Credit Line. There is no "free ride period" which would allow you to avoid a FINANCE CHARGE on your Credit Line credit advances.

**Method Used to Determine the Balance on Which the FINANCE CHARGE Will Be Computed.** A monthly FINANCE CHARGE will be imposed on all credit advances made under your Credit Line imposed from the date of each credit advance based on the "average daily balance" method. To get the average daily balance, we take the beginning balance of your Credit Line Account each day, add any new advances and subtract any payments or credits and any unpaid FINANCE CHARGES. This gives us a daily balance. Then, we add up all the daily balances for the billing cycle and divide the total by the number of days in the billing cycle. This gives us the "average daily balance."

**Method of Determining the Amount of FINANCE CHARGE.** Any FINANCE CHARGE is determined by applying the monthly "Periodic Rate" to the balance described herein. This is your FINANCE CHARGE calculated by applying a Periodic Rate.

You also agree to pay FINANCE CHARGES, not calculated by applying a Periodic Rate, as set forth below:

**Minimum FINANCE CHARGE.** In any event, including payment of the Credit Line balance in full, you may have to pay a Minimum FINANCE CHARGE of $100.00. This fee will be charged as follows: If the accrued interest from the Home Equity Plan Initial Disbursement Date to the Home Equity Plan Termination Date is less than $100.00..

**Additional Finance Charges.** The following additional FINANCE CHARGES will be charged to your Credit Line or paid in cash:

| Processing Fee: | Financed | $99.00 |

**Periodic Rate and Corresponding ANNUAL PERCENTAGE RATE.** We will determine the Periodic Rate and the corresponding ANNUAL PERCENTAGE RATE as follows. We start with an independent index which is the New York Prime Lending Rate (Wall Street Journal) (the "Index"). To determine the Periodic Rate that will apply to your account, we take the value of the Index, then divide the value by 12 (monthly). To obtain the ANNUAL PERCENTAGE RATE we multiply the Periodic Rate by 12 (monthly). This result is the ANNUAL PERCENTAGE RATE. The ANNUAL PERCENTAGE RATE includes only interest and no other costs.

The Periodic Rate and the corresponding ANNUAL PERCENTAGE RATE on your Credit Line will increase or decrease as the Index increases or decreases from time to time. Adjustments to the Periodic Rate and the corresponding ANNUAL PERCENTAGE RATE resulting from changes in the Index will take effect daily. Notwithstanding the above provisions, the maximum increase or decrease in the interest rate at any one time on this loan will not exceed 1.000 percentage points. In no event will the corresponding ANNUAL PERCENTAGE RATE be more than the lesser of 21.000% or the maximum rate allowed by applicable law. Today the Index is 5.500% per annum, and therefore the initial Periodic Rate and the corresponding ANNUAL PERCENTAGE RATE on your Credit Line are as stated below:

**Current Rates for the First Payment Stream**

| Range of Balance or Conditions | ANNUAL PERCENTAGE RATE | Monthly Periodic Rate |
|---|---|---|
| All Balances | 5.500% | 0.45833% |

Notwithstanding any other provision of this Agreement, we will not charge interest on any undisbursed loan proceeds, except as may be permitted during any Right of Rescission period.

**Conditions Under Which Other Charges May Be Imposed.** You agree to pay all the other fees and charges related to your Credit Line as set forth below:

**Payment of Closing Costs.** If you elect to charge your Credit Line Account to pay the closing costs associated with your Credit Line (such as title insurance premiums, appraisal fees, credit report fees, and recording fees), the total of these charges will be reflected as "closing costs" on your first periodic billing statement.

**Returned Items.** You may be charged $35.00 if you pay your Credit Line obligations with a check, draft, or other item that is dishonored for any reason, unless applicable law requires a lower charge or prohibits any charge.

**Late Charge.** Your payment will be late if it is not received by us within 10 days after the "Payment Due Date" shown on your periodic statement. If your payment is late we may charge you 5.000% of the payment.

**Security Interest Charges.** You agree to pay all security interest charges related to your Credit Line as set forth below:

| Appraisal Fee | $250.00 |
| Recording | $1211.67 |
| Title Insurance | $560.00 |
| Total | $2021.67 |

**Lender's Rights.** Under this Agreement, we have the following rights:

**Termination and Acceleration.** We can terminate your Credit Line Account and require you to pay us the entire outstanding balance in one payment, and charge you certain fees, if any of the following happen: (1) You commit fraud or make a material misrepresentation at any time in

connection with this Credit Agreement. This can include, for example, a false statement about your income, assets, liabilities, or any other aspects of your financial condition. (2) You do not meet the repayment terms of this Credit Agreement. (3) Your action or inaction adversely affects the collateral for the plan or our rights in the collateral. This can include, for example, failure to maintain required insurance, waste or destructive use of the dwelling, failure to pay taxes, death of all persons liable on the account, transfer of title or sale of the dwelling, creation of a senior lien on the dwelling without our permission, foreclosure by the holder of another lien, or the use of funds or the dwelling for prohibited purposes.

**Suspension or Reduction.** In addition to any other rights we may have, we can suspend additional extensions of credit or reduce your Credit Limit during any period in which any of the following are in effect:

(1) The value of your property declines significantly below the property's appraised value for purposes of this Credit Line Account. This includes, for example, a decline such that the initial difference between the Credit Limit and the available equity is reduced by fifty percent and may include a smaller decline depending on the individual circumstances.

(2) We reasonably believe that you will be unable to fulfill your payment obligations under your Credit Line Account due to a material change in your financial circumstances.

(3) You are in default under any material obligations of this Credit Line Account. We consider all of your obligations to be material. Categories of material obligations include the events described above under Termination and Acceleration, obligations to pay fees and charges, obligations and limitations on the receipt of credit advances, obligations concerning maintenance or use of the property or proceeds, obligations to pay and perform the terms of any other deed of trust, mortgage or lease of the property, obligations to notify us and to provide documents or information to us (such as updated financial information), obligations to comply with laws (such as zoning restrictions), and obligations of any comaker. No default will occur until we mail or deliver a notice of default to you, so you can restore your right to credit advances.

(4) We are precluded by government action from imposing the ANNUAL PERCENTAGE RATE provided for under this Agreement.

(5) The priority of our security interest is adversely affected by government action to the extent that the value of the security interest is less than one hundred twenty percent (120%) of the Credit Limit.

(6) We have been notified by governmental authority that continued advances may constitute an unsafe and unsound business practice.

**Change In Terms.** We may make changes to the terms of this Agreement if you agree to the change in writing at that time, if the change will unequivocally benefit you throughout the remainder of your Credit Line Account, or if the change is insignificant (such as changes relating to our data processing systems). If the Index is no longer available, we will choose a new Index and margin. The new Index will have an historical movement substantially similar to the original Index, and the new Index and margin will result in an ANNUAL PERCENTAGE RATE that is substantially similar to the rate in effect at the time the original Index becomes unavailable. We may prohibit additional extensions of credit or reduce your Credit Limit during any period in which the maximum ANNUAL PERCENTAGE RATE under your Credit Line Account is reached.

**Collection Costs.** Subject to any limits under applicable law, upon default, you agree to pay our attorneys' fees and all of our other collection expenses, whether or not there is a lawsuit, including legal expenses for bankruptcy proceedings.

**Rate Increase.** In addition to our other rights during termination and acceleration, we may increase the variable ANNUAL PERCENTAGE RATE under this Agreement to 4.000 percentage points over the then applicable ANNUAL PERCENTAGE RATE. The ANNUAL PERCENTAGE RATE will not exceed the maximum rate permitted by applicable law. If we do not increase the ANNUAL PERCENTAGE RATE upon termination or acceleration of your Credit Line Account, it will continue at the variable rate in effect as of the date of termination or acceleration of your Credit Line Account.

**Access Devices.** If your Credit Line is suspended or terminated, you must immediately return to us all Home Equity Line Checks and any other access devices. Any use of Home Equity Line Checks or other access devices following suspension or termination may be considered fraudulent. You will also remain liable for any further use of Home Equity Line Checks or other Credit Line access devices not returned to us.

**Delay in Enforcement.** We may delay or waive the enforcement of any of our rights under this Agreement without losing that right or any other right. If we delay or waive any of our rights, we may enforce that right at any time in the future without advance notice. For example, not terminating your account for non-payment will not be a waiver of our right to terminate your account in the future if you have not paid.

**Cancellation by you.** If you cancel your right to credit advances under this Agreement, you must notify us and return all Home Equity Line Checks and any other access devices to us. Despite cancellation, your obligations under this Agreement will remain in full force and effect until you have paid us all amounts due under this Agreement.

**Prepayment.** You may prepay all or any amount owing under this Credit Line at any time without penalty, except we will be entitled to receive the Minimum FINANCE CHARGES as stated above and to receive all accrued FINANCE CHARGES, and other charges, if any. Payments in excess of your Minimum Payment will not relieve you of your obligation to continue to make your Minimum Payments. Instead, they will reduce the principal balance owed on the Credit Line. You agree not to send us payments marked "paid in full", "without recourse", or similar language. If you send such a payment, we may accept it without losing any of our rights under this Agreement, and you will remain obligated to pay any further amount owed to us. All written communications concerning disputed amounts, including any check or other payment instrument that indicates that the payment constitutes "payment in full" of the amount owed or that is tendered with other conditions or limitations or as full satisfaction of a disputed amount must be mailed or delivered to: BANK OF THE COMMONWEALTH, Executive Office, 403 Boush Street, P. O. Box 1177, Norfolk, VA 23501-1177.

**Notices.** All notices will be sent to your address as shown in this Agreement. Notices will be mailed to you at a different address if you give us written notice of a different address. You agree to advise us promptly if you change your mailing address.

**Credit Information and Related Matters.** You authorize us to release information about you to third parties as described in our privacy policy and our Fair Credit Reporting Act notice, provided you did not opt out of the applicable policy, or as permitted by law. You agree that, upon our request, you will provide us with a current financial statement, a new credit application, or both, on forms provided by us. You also agree we may obtain credit reports on you at any time, at our sole option and expense, for any reason, including but not limited to determining whether there has been an adverse change in your financial condition. We may require a new appraisal of the Property which secures your Credit Line at any time, including an internal inspection, at our sole option and expense.

**Transfer or Assignment.** Without prior notice or approval from you, we reserve the right to sell or transfer your Credit Line Account and our rights and obligations under this Agreement to another lender, entity, or person, and to assign our rights under the Deed of Trust. Your rights under this Agreement belong to you only and may not be transferred or assigned. Your obligations, however, are binding on your heirs and legal representatives. Upon any such sale or transfer, we will have no further obligation to provide you with credit advances or to perform any other obligation under this Agreement.

**Tax Consequences.** You understand that neither we, nor any of our employees or agents, make any representation or warranty whatsoever concerning the tax consequences of your establishing and using your Credit Line, including the deductibility of interest, and that neither we nor our employees or agents will be liable in the event interest on your Credit Line is not deductible. You should consult your own tax advisor for guidance on this subject.

**Homestead Waiver.** You, to the extent permitted by law, hereby waive your homestead exemption with respect to all property subject to any security interest or lien granted to secure this loan.

**Notify Us of Inaccurate Information We Report To Consumer Reporting Agencies.** Please notify us if we report any inaccurate information about your account(s) to a consumer reporting agency. Your written notice describing the specific inaccuracy(ies) should be sent to us at the following address: Bank of the Commonwealth P. O. Box 1177 Norfolk, VA 23510-1177

**Financial Statements.** Borrower shall expressly agree to submit an updated personal financial statement in the event that [i] the personal financial statement currently on file with the Bank is over three hundred sixty five (365) days old; [ii] there occurs a significant change of any nature in the assets or liabilities of the Borrower; [iii] the Borrower assigns or transfers assets; or [iv] the Bank requests an updated personal financial statement.

**No Waiver.** No failure by the Lender to exercise any right herein shall be construed as a waiver of the right to exercise the same or any rights at any time.

**Notice.** Any notice to the Borrower(s) when placed in the mail addressed to, or left upon the premises of, the Borrower(s) at the address listed above, or at such address as may from time to time be shown on the Lender's records, at least five (5) days prior to the disposition of any collateral, shall constitute reasonable notice. The Borrower(s) and Guarantor(s) expressly agree to remain liable to the Lender for any deficiency.

**Representations.** The Borrower(s) represents and warrants that the Collateral, if any, is not subject to any assignment, claim, lien, right of set-off, or security interest of any character prior to that of the Lender except those disclosed to the Lender in writing by the Borrower, and that the Borrower shall not hereafter create any other claim or other security interest in the Collateral without prior written consent of the Lender.

**Maintenance.** The Borrower(s) shall do all things necessary to preserve and maintain the value and collectibility of any property securing this Note, including, but not limited to, the payment of taxes and premiums on policies of insurance on the due date without benefit of any grace period. Furthermore, the Borrower(s) agrees to pay when due all and any sales and payroll taxes.

**Governing Law.** This Agreement will be governed by and interpreted in accordance with federal law and the laws of the Commonwealth of

Loan No: 3501914 | CREDIT AGREEMENT AND DISCLOSURE
(Continued) | Page 4

**Virginia.** This Agreement has been accepted by us in the Commonwealth of Virginia.

**Caption Headings.** Caption headings in this Agreement are for convenience purposes only and are not to be used to interpret or define the provisions of this Agreement.

**Interpretation.** You agree that this Agreement, together with the Deed of Trust, is the best evidence of your agreements with us. If we go to court for any reason, we can use a copy, filmed or electronic, of any periodic statement, this Agreement, the Deed of Trust or any other document to prove what you owe us or that a transaction has taken place. The copy, microfilm, microfiche, or optical image will have the same validity as the original. You agree that, except to the extent you can show there is a billing error, your most current periodic statement is the best evidence of your obligation to pay.

**Severability.** If a court finds that any provision of this Agreement is not valid or should not be enforced, that fact by itself will not mean that the rest of this Agreement will not be valid or enforced. Therefore, a court will enforce the rest of the provisions of this Agreement even if a provision of this Agreement may be found to be invalid or unenforceable.

**Acknowledgment.** You understand and agree to the terms and conditions in this Agreement. By signing this Agreement, you acknowledge that you have read this Agreement. You also acknowledge receipt of a completed copy of this Agreement, including the Fair Credit Billing Notice and the early home equity line of credit application disclosure, in addition to the handbook entitled "When Your Home Is On the Line: What You Should Know About Home Equity Lines of Credit," given with the application.

This Agreement is dated February 18, 2005.

THIS AGREEMENT IS GIVEN UNDER SEAL AND IT IS INTENDED THAT THIS AGREEMENT IS AND SHALL CONSTITUTE AND HAVE THE EFFECT OF A SEALED INSTRUMENT ACCORDING TO LAW.

BORROWER:

X_____(Seal)
Rajesh S. Randeria

X_____(Seal)
Parul Randeria

Signed, acknowledged and delivered in the presence of:

X_____
Witness

X_____
Witness


ACCEPTED: BANK OF THE COMMONWEALTH

By:_____(Seal)
Authorized Signer


Effective Disbursement Date: _____

Loan No: 3501914

# CREDIT AGREEMENT AND DISCLOSURE
(Continued)

Page 5

## BILLING ERROR RIGHTS

### YOUR BILLING RIGHTS
### KEEP THIS NOTICE FOR FUTURE USE

This notice contains important information about your rights and our responsibilities under the Fair Credit Billing Act.

**Notify us in case of errors or questions about your bill.**

If you think your bill is wrong, or if you need more information about a transaction on your bill, write us on a separate sheet at the address listed on your bill. Write to us as soon as possible. We must hear from you no later than sixty (60) days after we sent you the first bill on which the error or problem appeared. You can telephone us, but doing so will not preserve your rights.

In your letter, give us the following information:

- Your name and account number.
- The dollar amount of the suspected error.
- Describe the error and explain, if you can, why you believe there is an error. If you need more information, describe the item you are not sure about.

If you have authorized us to pay your bill automatically from your savings or checking account, you can stop the payment on any amount you think is wrong. To stop the payment, your letter must reach us three (3) business days before the automatic payment is scheduled to occur.

**Your rights and our responsibilities after we receive your written notice.**

We must acknowledge your letter within thirty (30) days, unless we have corrected the error by then. Within ninety (90) days, we must either correct the error or explain why we believe the bill was correct.

After we receive your letter, we cannot try to collect any amount you question, or report you as delinquent. We can continue to bill you for the amount you question, including finance charges, and we can apply any unpaid amount against your Credit Limit. You do not have to pay any questioned amount while we are investigating, but you are still obligated to pay the parts of your bill that are not in question.

If we find that we made a mistake on your bill, you will not have to pay any finance charges related to any questioned amount. If we didn't make a mistake, you may have to pay finance charges, and you will have to make up any missed payments on the questioned amount. In either case, we will send you a statement of the amount you owe and the date on which it is due.

If you fail to pay the amount that we think you owe, we may report you as delinquent. However, if our explanation does not satisfy you and you write to us within ten (10) days telling us that you still refuse to pay, we must tell anyone we report you to that you have a question about your bill. And, we must tell you the name of anyone we reported you to. We must tell anyone we report you to that the matter has been settled between us when it finally is.

If we don't follow these rules, we can't collect the first $50 of the questioned amount, even if your bill was correct.

LASER PRO Lending, Ver. 5.34.00.003 Copr. Harland Financial Solutions, Inc. 1997, 2008. All Rights Reserved. - VA C:\CFI\LPL\D3E.FC TR-3571 PR-34

# CREDIT AGREEMENT AND DISCLOSURE

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|---|---|---|---|---|---|---|---|
| $350,000.00 | 09-18-2009 | 03-18-2014 | 3501914 | D408 | 416980 | 920 | |

References in the boxes above are for our use only and do not limit the applicability of this document to any particular loan or item.
Any item above containing "****" has been omitted due to text length limitations.

**Borrower:** Rajesh S. Randeria
Parul Randeria
246 W. Ocean View Avenue
Norfolk, VA 23503

**Lender:** BANK OF THE COMMONWEALTH
EXECUTIVE OFFICE
403 BOUSH STREET
P. O. BOX 1177
NORFOLK, VA 23501-1177

**CREDIT LIMIT: $350,000.00**

**DATE OF AGREEMENT: September 18, 2009**

**Introduction.** This Credit Agreement and Disclosure ("Agreement") governs your line of credit (the "Credit Line" or the "Credit Line Account") issued through BANK OF THE COMMONWEALTH. In this Agreement, the words "Borrower," "you," "your," and "Applicant" mean each and every person who signs this Agreement, including all Borrowers named above. The words "we," "us," "our," and "Lender" mean BANK OF THE COMMONWEALTH. You agree to the following terms and conditions:

**Promise to Pay.** You promise to pay BANK OF THE COMMONWEALTH, or order, the total of all credit advances and FINANCE CHARGES, together with all costs and expenses for which you are responsible under this Agreement or under the "Deed of Trust" which secures your Credit Line. You will pay your Credit Line according to the payment terms set forth below. If there is more than one Borrower, each is jointly and severally liable on this Agreement. This means we can require any Borrower to pay all amounts due under this Agreement, including credit advances made to any Borrower. Each Borrower authorizes any other Borrower, on his or her signature alone, to cancel the Credit Line, to request and receive credit advances, and to do all other things necessary to carry out the terms of this Agreement. We can release any Borrower from responsibility under this Agreement, and the others will remain responsible.

**Term.** The term of your Credit Line will begin as of the date of this Agreement ("Opening Date") and will continue until March 18, 2014 ("Maturity Date"). All indebtedness under this Agreement, if not already paid pursuant to the payment provisions below, will be due and payable upon maturity. The draw period of your Credit Line will begin on a date, after the Opening Date, when the Agreement is accepted by us in the Commonwealth of Virginia, following the expiration of the right to cancel, the perfection of the Deed of Trust, the receipt of all required certificates of noncancellation, and the meeting of all of our other conditions and will continue as follows: fifty-four (54) months. You may obtain credit advances during this period ("Draw Period"). You agree that we may renew or extend the period during which you may obtain credit advances or make payments. You further agree that we may renew or extend your Credit Line Account.

**Minimum Payment.** Your "Regular Payment" will be based on a percentage of your outstanding balance as shown below. Your payments will be due monthly.

| Range of Balances | Number of Payments | Regular Payment Calculation |
|---|---|---|
| All Balances | 54 | 1.500% of your outstanding balance |

Your "Minimum Payment" will be the Regular Payment, plus any amount past due and all other charges.

A change in the ANNUAL PERCENTAGE RATE can cause the balance to be repaid more quickly or more slowly. When rates decrease, less interest is due, so more of the payment repays the principal balance. When rates increase, more interest is due, so less of the payment repays the principal balance. If this happens, we may adjust your payment as follows: your final payment may be increased. Each time the ANNUAL PERCENTAGE RATE increases, we will check to see if your payment is sufficient to pay the interest due. If it is not, your payment will be increased by an amount sufficient to cover all accrued FINANCE CHARGES. You agree to pay not less than the Minimum Payment on or before the due date indicated on your periodic billing statement.

**How Your Payments Are Applied.** Unless otherwise agreed or required by applicable law, payments and other credits will be applied to late charges and other charges.

**Receipt of Payments.** All payments must be made by a check, automatic account debit, electronic funds transfer, money order, or other instrument in U.S. dollars and must be received by us at the remittance address shown on your periodic billing statement. Payments received at that address prior to 2:05 PM Eastern Time on any business day will be credited to your Credit Line as of the date received. If we receive payments at other locations, such payments will be credited promptly to your Credit Line, but crediting may be delayed for up to two (2) days after receipt.

**Credit Limit.** This Agreement covers a revolving line of credit for the principal amount of Three Hundred Fifty Thousand & 00/100 Dollars ($350,000.00), which will be your "Credit Limit" under this Agreement. During the Draw Period we will honor your request for credit advances subject to the section below on Lender's Rights. You may borrow against the Credit Line, repay any portion of the amount borrowed, and re-borrow up to the amount of the Credit Limit. Your Credit Limit is the maximum amount you may have outstanding at any one time. You agree not to attempt, request, or obtain a credit advance that will make your Credit Line Account balance exceed your Credit Limit. Your Credit Limit will not be increased should you overdraw your Credit Line Account. If you exceed your Credit Limit, you agree to repay immediately the amount by which your Credit Line Account exceeds your Credit Limit, even if we have not yet billed you. Any credit advances in excess of your Credit Limit will not be secured by the Deed of Trust covering your principal dwelling.

**Charges to your Credit Line.** We may charge your Credit Line to pay other fees and costs that you are obligated to pay under this Agreement, the Deed of Trust or any other document related to your Credit Line. In addition, we may charge your Credit Line to the Deed of Trust for this transaction, continuing insurance coverage as described in the paragraph titled "Insurance" below or as described in the Deed of Trust for funds required for We may also, at our option, charge your Credit Line to pay any costs or expenses to protect or perfect our security interest in your principal dwelling. These costs or expenses include, without limitation, payments to cure defaults under any existing liens on your principal dwelling. If you do not pay your property taxes, we may charge your Credit Line and pay the delinquent taxes. Any amount so charged to your Credit Line will be a credit advance and will decrease the funds available, if any, under the Credit Line. However, we have no obligation to provide any of the credit advances referred to in this paragraph.

**Credit Advances.** After the Effective Disbursement Date of this Agreement, you may obtain credit advances under your Credit Line as follows:

   **Credit Line Checks.** Writing a preprinted "Home Equity Line Check" that we will supply to you.

   **Telephone Request.** Requesting a credit advance from your Credit Line to be applied to your designated account by telephone. Except for transactions covered by the federal Electronic Fund Transfers Act and unless otherwise agreed in your deposit account agreement, you acknowledge and you agree that we do not accept responsibility for the authenticity of telephone instructions and that we will not be liable for any loss, expense, or cost arising out of any telephone request, including any fraudulent or unauthorized telephone request, when acting upon such instructions believed to be genuine.

   **Requests By Mail.** Requesting an advance by mail.

   **Requests in Person.** Requesting a credit advance in person at any of our authorized locations.

If there is more than one person authorized to use this Credit Line Account, you agree not to give us conflicting instructions, such as one Borrower telling us not to give advances to the other.

**Limitations on the Use of Checks.** We reserve the right not to honor Home Equity Line Checks in the following circumstances:

   **Credit Limit Violation.** Your Credit Limit has been or would be exceeded by paying the Home Equity Line Check.

   **Post-dated Checks.** Your Home Equity Line Check is post-dated. If a post-dated Home Equity Line Check is paid and as a result any other check is returned or not paid, we are not responsible.

   **Stolen Checks.** Your Home Equity Line Checks have been reported lost or stolen.

   **Unauthorized Signatures.** Your Home Equity Line Check is not signed by an "Authorized Signer" as defined below.

   **Termination or Suspension.** Your Credit Line has been terminated or suspended as provided in this Agreement or could be if we paid the Home Equity Line Check.

   **Transaction Violation.** Your Home Equity Line Check is less than the minimum amount required by this Agreement or you are in violation of any other transaction requirement or would be if we paid the Home Equity Line Check.

If we pay any Home Equity Line Check under these conditions, you must repay us, subject to applicable laws, for the amount of the Home Equity Line Check. The Home Equity Line Check itself will be evidence of your debt to us together with this Agreement. Our liability, if any, for wrongful dishonor of a check is limited to your actual damages. Dishonor for any reason as provided in this Agreement is not wrongful.

Exhibit 2

**CREDIT AGREEMENT AND DISCLOSURE**

Loan No: 3501914 (Continued) Page 2

---

dishonor. We may choose not to return Home Equity Line Checks along with your periodic billing statements; however, your use of each Home Equity Line Check will be reflected on your periodic statement as a credit advance. We do not "certify" Home Equity Line Checks drawn on your Credit Line.

**Transaction Requirements.** The following transaction limitations will apply to the use of your Credit Line:

  **Credit Line Home Equity Line Check Limitations.** The following transaction limitations will apply to your Credit Line and the writing of Home Equity Line Checks

    **Minimum Advance Amount.** The minimum amount of any credit advance that can be made on your Credit Line is $100.00. This means any Home Equity Line Check must be written for at least the minimum advance amount.

    **Telephone Request, Request By Mail and In Person Request Limitations.** There are no transaction limitations for requesting an advance by telephone, requesting an advance by mail or requesting an advance in person.

**Limitation on All Access Devices.** You may not use any access device, whether described above or added in the future, for any illegal or unlawful transaction, and we may decline to authorize any transaction that we believe poses an undue risk of illegality or unlawfulness. Notwithstanding the foregoing, we may collect on any debt arising out of any illegal or unlawful transaction.

**Authorized Signers.** The words "Authorized Signer" on Home Equity Line Checks as used in this Agreement mean and include each person who (a) signs the application for this Credit Line, (b) signs this Agreement, or (c) has executed a separate signature authorization card for the Credit Line Account.

**Lost Home Equity Line Checks.** If you lose your Home Equity Line Checks or if someone is using them without your permission, you agree to let us know immediately. The fastest way to notify us is by calling us at (757) 446-6900. You also can notify us at our address shown at the beginning of this Agreement.

**Future Credit Line Services.** Your application for this Credit Line also serves as a request to receive any new services (such as access devices) which may be available at some future time as one of our services in connection with this Credit Line. You understand that this request is voluntary and that you may refuse any of these new services at the time they are offered. You further understand that the terms and conditions of this Agreement will govern any transactions made pursuant to any of these new services.

**Collateral.** You acknowledge this Agreement is secured by SECOND DEED OF TRUST DATED FEBRUARY 18, 2005 AGAINST PROPERTY AND IMPROVEMENTS LOCATED AT 246 W OCEAN VIEW AVENUE, NORFOLK, VA .

**Insurance.** You must obtain insurance on the Property securing this Agreement that is reasonably satisfactory to us. You may obtain property insurance through any company of your choice that is reasonably satisfactory to us. You have the option of providing any insurance required under this Agreement through an existing policy or a policy independently obtained and paid for by you, subject to our right, for reasonable cause before credit is extended, to decline any insurance provided by you. Subject to applicable law, if you fail to obtain or maintain insurance as required in the Deed of Trust, we may purchase insurance to protect our own interest, add the premium to your balance, pursue any other remedies available to us, or do any one or more of these things.

**Right of Setoff.** To the extent permitted by applicable law, we reserve a right of setoff in all your accounts with us (whether checking, savings, or some other account), including without limitation, all accounts you may open in the future. However, this does not include any IRA or Keogh accounts, or any trust accounts for which setoff would be prohibited by law. You authorize us, to the extent permitted by applicable law, to charge or setoff all sums owing on this Agreement against any and all such accounts.

**Periodic Statements.** If you have a balance owing on your Credit Line Account or have any account activity, we will send you a periodic statement. It will show, among other things, credit advances, FINANCE CHARGES, other charges, payments made, other credits, your "Previous Balance," and your "New Balance." Your statement also will identify the Minimum Payment you must make for that billing period and the date it is due.

**When FINANCE CHARGES Begin to Accrue.** Periodic FINANCE CHARGES for credit advances under your Credit Line will begin to accrue on the date credit advances are posted to your Credit Line. There is no "free ride period" which would allow you to avoid a FINANCE CHARGE on your Credit Line credit advances.

**Method Used to Determine the Balance on Which the FINANCE CHARGE Will Be Computed.** A monthly FINANCE CHARGE will be imposed on all credit advances made under your Credit Line imposed from the date of each credit advance based on the "average daily balance" method. To get the average daily balance, we take the beginning balance of your Credit Line Account each day, add any new advances and subtract any payments or credits and any unpaid FINANCE CHARGES. This gives us a daily balance. Then, we add up all the daily balances for the billing cycle and divide the total by the number of days in the billing cycle. This gives us the "average daily balance."

**Method of Determining the Amount of FINANCE CHARGE.** Any FINANCE CHARGE is determined by applying the monthly "Periodic Rate" to the balance described herein. This is your FINANCE CHARGE calculated by applying a Periodic Rate.

You also agree to pay FINANCE CHARGES, not calculated by applying a Periodic Rate, as set forth below:

  **Minimum FINANCE CHARGE.** In any event, including payment of the Credit Line balance in full, you may have to pay a Minimum FINANCE CHARGE of $100.00. This fee will be charged as follows: If the accrued interest from the Home Equity Plan Initial Disbursement Date to the Home Equity Plan Termination Date is less than $100.00..

**Periodic Rate and Corresponding ANNUAL PERCENTAGE RATE.** We will determine the Periodic Rate and the corresponding ANNUAL PERCENTAGE RATE as follows. We start with an independent index which is the New York Prime Lending Rate (Wall Street Journal) (the "Index"). To determine the Periodic Rate that will apply to your account, we take the value of the Index, then divide the value by 12 (monthly). To obtain the ANNUAL PERCENTAGE RATE we multiply the Periodic Rate by 12 (monthly). This result is the ANNUAL PERCENTAGE RATE. The ANNUAL PERCENTAGE RATE includes only interest and no other costs.

The Periodic Rate and the corresponding ANNUAL PERCENTAGE RATE on your Credit Line will increase or decrease as the Index increases or decreases from time to time. Adjustments to the Periodic Rate and the corresponding ANNUAL PERCENTAGE RATE resulting from changes in the Index will take effect daily. Notwithstanding the above provisions, the maximum increase or decrease in the interest rate at any one time on this loan will not exceed 1.000 percentage points. In no event will the corresponding ANNUAL PERCENTAGE RATE be less than 0.000% per annum or more than the lesser of 21.000% or the maximum rate allowed by applicable law. Today the Index is 3.250% per annum, and therefore the Initial Periodic Rate and the corresponding ANNUAL PERCENTAGE RATE on your Credit Line are as stated below:

**Current Rates for the First Payment Stream**

| Range of Balance or Conditions | Margin Added to Index | ANNUAL PERCENTAGE RATE | Monthly Periodic Rate |
|---|---|---|---|
| All Balances | 0.000% | 0.000% | 0.50000% |

Notwithstanding any other provision of this Agreement, we will not charge interest on any undisbursed loan proceeds, except as may be permitted during any Right of Rescission period.

**Conditions Under Which Other Charges May Be Imposed.** You agree to pay all the other fees and charges related to your Credit Line as set forth below:

  **Returned Items.** You may be charged $35.00 if you pay your Credit Line obligations with a check, draft, or other item that is dishonored for any reason, unless applicable law requires a lower charge or prohibits any charge.

  **Late Charge.** Your payment will be late if it is not received by us within 10 days after the "Payment Due Date" shown on your periodic statement. If your payment is late we may charge you 5.000% of the payment.

  **Security Interest Charges.** You agree to pay all security interest charges related to your Credit Line as set forth below:

    EXTENSION/RENEWAL FEE    $250.00
    Total                    $250.00

**Lender's Rights.** Under this Agreement, we have the following rights

  **Termination and Acceleration.** We can terminate your Credit Line Account and require you to pay us the entire outstanding balance in one payment, and charge you certain fees, if any of the following happen: (1) You commit fraud or make a material misrepresentation at any time in connection with this Credit Agreement. This can include, for example, a false statement about your income, assets, liabilities, or any other aspects of your financial condition. (2) You do not meet the repayment terms of this Credit Agreement. (3) Your action or

inaction adversely affects the collateral for the plan or our rights in the collateral. This can include, for example, failure to maintain required insurance, waste or destructive use of the dwelling, failure to pay taxes, death of all persons liable on the account, transfer of title or sale of the dwelling, creation of a senior lien on the dwelling without our permission, foreclosure by the holder of another lien, or the use of funds or the dwelling for prohibited purposes.

**Suspension or Reduction.** In addition to any other rights we may have, we can suspend additional extensions of credit or reduce your Credit Limit during any period in which any of the following are in effect:

(1) The value of your property declines significantly below the property's appraised value for purposes of this Credit Line Account. This includes, for example, a decline such that the initial difference between the Credit Limit and the available equity is reduced by fifty percent and may include a smaller decline depending on the individual circumstances.

(2) We reasonably believe that you will be unable to fulfill your payment obligations under your Credit Line Account due to a material change in your financial circumstances.

(3) You are in default under any material obligations of this Credit Line Account. We consider all of your obligations to be material. Categories of material obligations include the events described above under Termination and Acceleration, obligations to pay fees and charges, obligations and limitations on the receipt of credit advances, obligations concerning maintenance or use of the property or proceeds, obligations to pay and perform the terms of any other deed of trust, mortgage or lease of the property, obligations to notify us and to provide documents or information to us (such as updated financial information), obligations to comply with applicable laws (such as zoning restrictions), and obligations of any comaker.

(4) We are precluded by government action from imposing the ANNUAL PERCENTAGE RATE provided for under this Agreement.

(5) The priority of our security interest is adversely affected by government action to the extent that the value of the security interest is less than one hundred twenty percent (120%) of the Credit Limit.

(6) We have been notified by governmental authority that continued advances may constitute an unsafe and unsound business practice.

**Change in Terms.** We may make changes to the terms of this Agreement if you agree to the change in writing at that time, if the change will unequivocally benefit you throughout the remainder of your Credit Line Account, or if the change is insignificant (such as changes relating to our data processing systems). If the index is no longer available, we will choose a new index and margin. The new index will have an historical movement substantially similar to the original index, and the new index and margin will result in an ANNUAL PERCENTAGE RATE that is substantially similar to the rate in effect at the time the original index becomes unavailable. We may prohibit additional extensions of credit or reduce your Credit Limit during any period in which the maximum ANNUAL PERCENTAGE RATE under your Credit Line Account is reached.

**Collection Costs.** Subject to any limits under applicable law, upon default, you agree to pay our attorneys' fees and all of our other collection expenses, whether or not there is a lawsuit, including legal expenses for bankruptcy proceedings.

**Rate Increase.** In addition to our other rights during termination and acceleration, we may increase the variable ANNUAL PERCENTAGE RATE under this Agreement to 4.000 percentage points over the then applicable ANNUAL PERCENTAGE RATE. The ANNUAL PERCENTAGE RATE will not exceed the maximum rate permitted by applicable law. If we do not increase the ANNUAL PERCENTAGE RATE upon termination or acceleration of your Credit Line Account, it will continue at the variable rate in effect as of the date of termination or acceleration of your Credit Line Account.

**Access Devices.** If your Credit Line is suspended or terminated, you must immediately return to us all Home Equity Line Checks and any other access devices. Any use of Home Equity Line Checks or other access devices following suspension or termination may be considered fraudulent. You will also remain liable for any further use of Home Equity Line Checks or other Credit Line access devices not returned to us.

**Delay in Enforcement.** We may delay or waive the enforcement of any of our rights under this Agreement without losing that right or any other right. If we delay or waive any of our rights, we may enforce that right at any time in the future without advance notice. For example, not terminating your account for non-payment will not be a waiver of our right to terminate your account in the future if you have not paid.

**Cancellation by you.** If you cancel your right to credit advances under this Agreement, you must notify us in writing at the address shown on your periodic billing statement or other designated address and return all Home Equity Line Checks and any other access devices to us. Despite cancellation, your obligations under this Agreement will remain in full force and effect until you have paid us all amounts due under this Agreement.

**Prepayment.** You may prepay all or any amount owing under this Credit Line at any time without penalty, except we will be entitled to receive the Minimum FINANCE CHARGES as stated above and to receive all accrued FINANCE CHARGES, and other charges, if any. Payments in excess of your Minimum Payment will not relieve you of your obligation to continue to make your Minimum Payments. Instead, they will reduce the principal balance owed on the Credit Line. You agree not to send us payments marked "paid in full", "without recourse", or similar language. If you send such a payment, we may accept it without losing any of our rights under this Agreement, and you will remain obligated to pay any further amount owed to us. All written communications concerning disputed amounts, including any check or other payment instrument that indicates that the payment constitutes "payment in full" of the amount owed or that is tendered with other conditions or limitations or as full satisfaction of a disputed amount must be mailed or delivered to: BANK OF THE COMMONWEALTH, EXECUTIVE OFFICE, 403 BOUSH STREET, P.O. BOX 1177, NORFOLK, VA 23501-1177.

**Notices.** All notices will be sent to your address as shown in this Agreement. Notices will be mailed to you at a different address if you give us written notice of a different address. You agree to advise us promptly if you change your mailing address.

**Credit Information and Related Matters.** You authorize us to release information about you to third parties as described in our privacy policy and our Fair Credit Reporting Act notice, provided you did not opt out of the applicable policy, or as permitted by law. You agree that, upon our request, you will provide us with a current financial statement, a new credit application, or both, on forms provided by us. You also agree we may obtain credit reports on you at any time, at our sole option and expense, for any reason, including but not limited to determining whether there has been an adverse change in your financial condition. We may require a new appraisal of the Property which secures your Credit Line at any time, including an internal inspection, at our sole option and expense.

**Transfer or Assignment.** Without prior notice or approval from you, we reserve the right to sell or transfer your Credit Line Account and our rights and obligations under this Agreement to another lender, entity, or person, and to assign our rights under the Deed of Trust. Your rights under this Agreement belong to you only and may not be transferred or assigned. Your obligations, however, are binding on your heirs and legal representatives. Upon any such sale or transfer, we will have no further obligation to provide you with credit advances or to perform any other obligation under this Agreement.

**Tax Consequences.** You understand that neither we, nor any of our employees or agents, make any representation or warranty whatsoever concerning the tax consequences of your establishing and using your Credit Line, including the deductibility of interest, and that neither we nor our employees or agents will be liable in the event interest on your Credit Line is not deductible. You should consult your own tax advisor for guidance on this subject.

**Homestead Waiver.** You, to the extent permitted by law, hereby waive your homestead exemption with respect to all property subject to any security interest or lien granted to secure this loan.

**Notify Us of Inaccurate Information We Report To Consumer Reporting Agencies.** Please notify us if we report any inaccurate information about your account(s) to a consumer reporting agency. Your written notice describing the specific inaccuracy(ies) should be sent to us at the following address: Bank of the Commonwealth P.O. Box 1177 Norfolk, VA 23510-1177.

**Financial Statements.** Borrower shall expressly agree to submit an updated personal financial statement in the event that [i] the personal financial statement currently on file with the Bank is over three hundred sixty five (365) days old; [ii] there occurs a significant change of any nature in the assets or liabilities of the Borrower; [iii] the Borrower assigns or transfers assets; or [iv] the Bank requests an updated personal financial statement.

**No Waiver.** No failure by the Lender to exercise any right herein shall be construed as a waiver of the right to exercise the same or any rights at any time.

**Notice.** Any notice to the Borrower(s) when placed in the mail addressed to, or left upon the premises of, the Borrower(s) at the address listed above, or at such address as may from time to time be shown on the Lender's records, at least five (5) days prior to the disposition of any collateral, shall constitute reasonable notice. The Borrower(s) and Guarantor(s) expressly agree to remain liable to the Lender for any deficiency.

**Representations.** The Borrower(s) represents and warrants that the Collateral, if any, is not subject to any assignment, claim, lien, right of, set off, or security interest of any character prior to that of the Lender except those disclosed to the Lender in writing by the Borrower, and that the Borrower shall not hereafter create any other claim or other security interest in the Collateral without prior written consent of the Lender.

**Maintenance.** The Borrower(s) shall do all things necessary to preserve and maintain the value and collectibility of any property securing this

**CREDIT AGREEMENT AND DISCLOSURE**

Loan No: 3501914 (Continued) Page 4

Note, including, but not limited to, the payment of taxes and premiums on policies of insurance on the due date without benefit of any grace period. Furthermore, the Borrower(s) agrees to pay when due all and any sales and payroll taxes.

**Governing Law.** This Agreement will be governed by federal law applicable to us and, to the extent not preempted by federal law, the laws of the Commonwealth of Virginia without regard to its conflicts of law provisions. This Agreement has been accepted by us in the Commonwealth of Virginia.

**Caption Headings.** Caption headings in this Agreement are for convenience purposes only and are not to be used to interpret or define the provisions of this Agreement.

**Interpretation.** You agree that this Agreement, together with the Deed of Trust, is the best evidence of your agreements with us. If we go to court for any reason, we can use a copy, filmed or electronic, of any periodic statement, this Agreement, the Deed of Trust or any other document to prove what you owe us or that a transaction has taken place. The copy, microfilm, microfiche, or optical image will have the same validity as the original. You agree that, except to the extent you can show there is a billing error, your most current periodic statement is the best evidence of your obligation to pay.

**Severability.** If a court finds that any provision of this Agreement is not valid or should not be enforced, that fact by itself will not mean that the rest of this Agreement will not be valid or enforced. Therefore, a court will enforce the rest of the provisions of this Agreement even if a provision of this Agreement may be found to be invalid or unenforceable.

**Acknowledgment.** You understand and agree to the terms and conditions in this Agreement. By signing this Agreement, you acknowledge that you have read this Agreement. You also acknowledge receipt of a completed copy of this Agreement, including the Fair Credit Billing Notice and the early home equity line of credit application disclosure, in addition to the handbook entitled "What you should know about Home Equity Lines of Credit," given with the application.

This Agreement is dated September 18, 2009.

THIS AGREEMENT IS GIVEN UNDER SEAL AND IT IS INTENDED THAT THIS AGREEMENT IS AND SHALL CONSTITUTE AND HAVE THE EFFECT OF A SEALED INSTRUMENT ACCORDING TO LAW.

BORROWER:

X _____ (Seal)    X _____ (Seal)
   Rajesh S. Randeria                   Parul Randeria

Signed, acknowledged and delivered in the presence of:

X _____
   Witness

X _____
   Witness

ACCEPTED: BANK OF THE COMMONWEALTH

By: _____ (Seal)
    Authorized Signer

Effective Disbursement Date: _____

**CREDIT AGREEMENT AND DISCLOSURE**
(Continued)

Loan No: 3501914

Page 5

## BILLING ERROR RIGHTS

### YOUR BILLING RIGHTS

### KEEP THIS NOTICE FOR FUTURE USE

This notice contains important information about your rights and our responsibilities under the Fair Credit Billing Act.

**Notify us in case of errors or questions about your bill.**

If you think your bill is wrong, or if you need more information about a transaction on your bill, write us on a separate sheet at the address listed on your bill. Write to us as soon as possible. We must hear from you no later than sixty (60) days after we sent you the first bill on which the error or problem appeared. You can telephone us, but doing so will not preserve your rights.

In your letter, give us the following information:

- Your name and account number.
- The dollar amount of the suspected error.
- Describe the error and explain, if you can, why you believe there is an error. If you need more information, describe the item you are not sure about.

If you have authorized us to pay your bill automatically from your savings or checking account, you can stop the payment on any amount you think is wrong. To stop the payment, your letter must reach us three (3) business days before the automatic payment is scheduled to occur.

**Your rights and our responsibilities after we receive your written notice.**

We must acknowledge your letter within thirty (30) days, unless we have corrected the error by then. Within ninety (90) days, we must either correct the error or explain why we believe the bill was correct.

After we receive your letter, we cannot try to collect any amount you question, or report you as delinquent. We can continue to bill you for the amount you question, including finance charges, and we can apply any unpaid amount against your Credit Limit. You do not have to pay any questioned amount while we are investigating, but you are still obligated to pay the parts of your bill that are not in question.

If we find that we made a mistake on your bill, you will not have to pay any finance charges related to any questioned amount. If we didn't make a mistake, you may have to pay finance charges, and you will have to make up any missed payments on the questioned amount. In either case, we will send you a statement of the amount you owe and the date on which it is due.

If you fail to pay the amount that we think you owe, we may report you as delinquent. However, if our explanation does not satisfy you and you write to us within ten (10) days telling us that you still refuse to pay, we must tell anyone we report you to that you have a question about your bill. And, we must tell you the name of anyone we reported you to. We must tell anyone we report you to that the matter has been settled between us when it finally is.

If we don't follow these rules, we can't collect the first $50 of the questioned amount, even if your bill was correct.



February 21, 2014

Rajesh S. and Parul R. Randeria
246 West Ocean View Ave.
Norfolk, VA 23503-1543

RE: Loan 3501914

Dear Mr. and Mrs. Randeria

Southern Bank and Trust Company is requesting the above Note be paid in full as per the current terms of the Note. It will mature in full on 3/18/2014. The current principal balance due is $343,348.88 along with applicable interest and any other related fees associated to the loan will be due in full. Please contact me when you need the exact payoff amount, and we will gladly provide this information to you.

Should you have and questions, please do not hesitate to contact me by phone at (757)446-6900.

Thank you,

Jamie Hill
Vice President, Special Assets Manager

MEMBER FDIC
and your community

Exhibit 3



Since 1901
SouthernBank

May 13, 2014

**VIA CERTIFIED MAIL, RETURN RECEIPT REQUESTED AND**
**FIRST CLASS MAIL**

Rajesh S. Randeria and Parul R. Randeria
246 West Ocean View Avenue
Norfolk, VA 23503-1543

Re:  $350,000 Home Equity Line of Credit – Loan No. 3501914
     Collateral – 246 West Ocean View Avenue, Norfolk, VA 23503-1543

### Notice of Default and Demand for Payment

Dear Mr. and Mrs. Randeria:

On February 21, 2014 Southern Bank and Trust Company ("Bank"), as successor by receivership assignment from Bank of the Commonwealth, notified you by letter that the Loan matured on March 18, 2014 and payment in full was due at that time. You are hereby notified that the Loan is in default by reason of the Borrower's non-payment of the balance due at maturity. Pursuant to the terms of the loan and security documents relating to the loan (the "Loan Documents"), the Bank hereby demands that the Loan be paid in full on or before May 30, 2014. The total amount due under the Loan through May 30, 2014 is as follows:

| | |
|---|---:|
| Principal | $343,010.95 |
| Interest | 3,327.73 |
| Late Charges | 87.48 |
| Legal Fees | 721.50 |
| **Total Amount Due:** | **$347,147.66** |

If the Bank does not receive payment in full of the Loans on or before May 30, 2014 it may exercise its rights it deems appropriate to protect its interest as permitted by applicable law, including without limitation, liquidation of all collateral and the initiation of legal proceedings to collect the amounts due from you.

You may also be responsible for certain additional Bank's out-of-pocket costs and expenses of collection with respect to the Loan incurred after the date of this letter. Those amounts are not included in the above calculation and are on-going.

MEMBER FDIC

Exhibit 4

Rajesh S. and Parul R. Randeria
Page 2
May 13, 2014

**Please be advised that the information set forth above supersedes any information you have received or may receive regarding the Loan as a result of our automated payment and billing system, or otherwise. Any payment in an amount less than the full, accelerated balance due on the Loan will be credited on account and will not serve to reinstate the Loans.**

You are instructed to direct any questions or communications regarding this Notice of Default and Demand for Payment, and/or regarding the Loan, to me. I can be reached at (757) 446-9460. In addition, you may contact me to confirm the balance for the indebtedness arising from the Promissory Notes and to notify us of the date on which you intend to make payment.

Sincerely,

James C. Hill
Vice President & Special Assets Manager

MEMBER FDIC

22067491v1 240902.000101